# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-0928

ADA BOBBITT, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before FARLEY, IVERS, and GREENE, *Judges*.

# O R D E R

The issue before the Court is whether the appellant, Ada Bobbitt, filed a timely Notice of Appeal (NOA) from an August 2002 decision of the Board of Veterans' Appeals (Board or BVA). For the reasons that follow, the Court holds that the NOA submitted by the appellant was timely filed under the decisions of the United States Court of Appeals for the Federal Circuit (Federal Circuit).

On August 22, 2002, the Board issued to the appellant a copy of a decision denying her claims for VA service connection. Accompanying the copy of the decision was an appeals notice informing her, inter alia, that any appeal of the Board decision must be filed with the Court within 120 days from the date of mailing of the notice of the Board decision. The appeals notice specifically advised: *"Filing a copy of your notice of Appeal with the General Counsel, the Board, or any other VA office WILL NOT protect your right to appeal to the Court*." *See* May 14, 2003, Transmittal of Copy of Board Decision at 14 (emphasis in original).

On December 11, 2002, the Board received from the appellant a VA Form 21-4138, "STATEMENT IN SUPPORT OF CLAIM" (STATEMENT) signed by the appellant and dated December 5, 2002. *See* Exhibit A to Appellant's Response to Order to Show Cause (OSC Response). In that STATEMENT, she asked the Board to "[p]lease forward my claim to the Court of Veterans Appeals (COVA) for consideration." *Id*. The appellant requested that the STATEMENT be considered as "my Notice of Disagreement with the BVA decision dated 08-22-2002" and she asked that she "be granted a waiver of the $50 filing fee required to submit a claim to the COVA." *Id*. The STATEMENT was sent to the Board by William Shoucair, a Veterans Assistance Counselor from the Louisiana Department of Veterans Affairs (LDVA), who in a cover letter described the submission as a "[NOTICE OF DISAGREEMENT] WITH BVA DECISION DATED 08-22-02 & REQUEST TO FORWARD CLAIM TO COVA FOR CONSIDERATION." *Id*. Mr. Shoucair asked that the matter be given the Board's "prompt attention." *Id.* On December 20, 2002, the 120-day filing period prescribed by 38 U.S.C. § 7266 for the appellant to timely file her appeal with the Court expired.

In a letter dated January 8, 2003, the Board responded to the appellant's STATEMENT: "It appears that you wish to file an appeal with the United States Court of Appeals for Veterans Claims. I have enclosed instructions for this filing. I hope this information has been helpful." Exhibit C to OSC Response. Four months later, on May 7, 2003, the appellant filed an NOA with this Court. On May 21, 2003, the Court ordered her to show cause, within 20 days, why this appeal should not be dismissed for lack of jurisdiction. On June 13, 2003, the appellant filed a response to the Court's order. In her response she stated:

> Due to my inexperience in handling these matters, I put aside some papers I received Aug[ust] 26, 2002, regarding this NOA [and] forgot to take care of them within the 120 days. If my ignorance in handling these matters counts, I beg the Court not to dismiss this appeal and grant me a second chance. I am trying to get a lawyer.

Appellant's Response to May 21, 2003, Order.

Following a stay and an extension of the stay, on August 18, 2003, the appellant's current counsel filed a notice of appearance with the Court. On August 21, 2003, the Court granted an extension of time to allow counsel time to consult with the appellant. On October 24, 2003, the appellant, through counsel, filed the OSC Response.

Before the Court, the appellant argues that her STATEMENT was an informal NOA and that it had been timely because it was filed with the Board within the statutory judicial-appeal period. She further argues that if the NOA is not considered timely, she is entitled to equitable tolling of the appeal period and on that basis her appeal should not be dismissed for lack of jurisdiction. She asserts that (1) she acted with due diligence by actively pursuing her judicial remedies, (2) the Board was at fault in holding onto her STATEMENT for a month, thus allowing the statutory filing period to lapse, and then responding to her by offering advice on how to file a then-untimely NOA, and (3) the services provided by the LDVA veterans assistance counselor should be considered government action that induced or tricked her into filing an untimely NOA.

This Court's jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). Furthermore, Congress is the only one that may determine a lower Federal court's subject-matter jurisdiction. U.S. CONST. art. III, § 1. The ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.*, 298 U.S. 178 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252 (1992). This Court "does not have jurisdiction over an appeal from an adverse Board decision without a timely notice of appeal." *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001); *see* 38 U.S.C. § 7266; *Martin v. Brown*, 10 Vet.App. 100, 101-02 (1997) (per curiam order). To be timely under precedents construing 38 U.S.C. § 7266(a) and Rule 4 of the Court's Rules of Practice and Procedure (Rules), an NOA generally must be filed "*with the Court* within 120 days*" after notice of the Board decision is mailed to an appellant. 38 U.S.C.

§ 7266(a) (emphasis added); *see Cintron v. West*, 13 Vet. App. 251, 254 (1999); *Leonard v. West*, 12 Vet.App. 554, 555 (1999) (per curiam order).

The applicable provisions of 38 U.S.C. § 7266, regarding how to file an NOA with the Court, read as follows:

> (a) In order to obtain review by the Court [] of a final decision of the Board [], a person adversely affected by such decision shall file a[n NOA] with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.
>
> (b) An appellant shall file a[n NOA] under this section by delivering or mailing the notice to the Court.
>
> (c) A[n NOA] shall be deemed to be received by the Court as follows:
>
> > (1) On the date of receipt by the Court, if the notice is delivered.
> >
> > (2) On the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.
>
> (d) For a[n NOA] mailed to the Court to be deemed to be received under subsection (c)(2) on a particular date, the United States Postal Service postmark on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court's determination as to legibility shall be final and not subject to review by any other Court.

38 U.S.C. § 7266. Nowhere in the text of the statute has Congress authorized a veteran to file an NOA with a VA regional office (VARO), the Board, the VA medical system, or the VA Office of General Counsel in lieu of submitting it to the Court. Indeed, VA is directed by statute to provide notice to claimants of decisions of the Board and to include in that notice "an explanation of the procedures for obtaining review of the decision." 38 U.S.C. § 5104(a). In accordance with section 5104(a), VA sends to claimants with each decision of the Board an appeals notice (VA Form 4597) that specifically directs claimants how to appeal to the Court. The appeals notice also instructs a VA claimant that an NOA "must be filed with the Court within 120 days from the date of mailing" of the Board decision, provides the Court's address, and states that while a claimant must mail a copy of the NOA to the VA General Counsel, that mailing "does not take the place of" the NOA that must be filed with the Court. The Federal Circuit has recognized the appeals notice as complying with the requirements of section 5104(a), holding that it adequately explains "how and when" to pursue an appeal to the Court. *Cummings v. West*, 136 F.3d 1468, 1472-73 (Fed. Cir. 1998), *cert. denied*, 524 U.S. 954 (1998).

3

Statutory filing deadlines, even if they are contained in a judicial review statute, are subject to the doctrine of equitable tolling. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990); *but see Stone v. INS*, 514 U.S. 386, 405 (1995) ("Judicial review provisions, however, are jurisdictional in nature and must be construed with strict fidelity to their terms. . . . This is all the more true of statutory provisions specifying the timing of review, for those time limits are, as we have often stated, 'mandatory and jurisdictional,' and are not subject to equitable tolling.") (citation omitted). Equitable tolling is available in two types of situations: (1) "[W]here the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. However, the Supreme Court in denying equitable tolling to Mr. Irwin, noted that the principles of equitable tolling do not extend to "a garden variety claim of excusable neglect." *Id*.

The Supreme Court in *United States v. Brockcamp*, 519 U.S. 347 (1997), stated the basic test for deciding whether equitable tolling should apply in a situation as the following: "Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply?" *Id*. at 350. Congress in creating section 7266 was very clear on where to mail an NOA. 38 U.S.C. § 7266(a)-(d). Congress even provided precise details on how the Court was to determine the proper postmark on an NOA mailed to the Court. 38 U.S.C. § 7266(d). Furthermore, in section 5104(a), Congress directed the Secretary to inform veterans how to file an NOA. 38 U.S.C. § 5104(a). In the manner previously described, and because the system is "imbued with special beneficence from a grateful sovereign," *Bailey v. West,* 160 F.3d 1360, 1367 (Fed. Cir. 1998) (en banc) (Michel, J., concurring) (*Bailey I*); *see also Barrett*, __ F.3d __, No. 03-7149 (Fed. Cir. Apr. 4, 2004), the veteran receives specific directions from the Secretary on when, how, and where to properly file an NOA, 38 U.S.C. § 5104(a); VA Form 4597. Given the specificity provided by Congress in 38 U.S.C. §§ 5104, 7266, it would appear that equitable tolling might not be available in a situation where an NOA was filed in the improper place. *See Brockcamp*, 519 U.S. at 350 (holding 26 U.S.C. § 6511 not subject to equitable tolling because it "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions").

Notwithstanding the recognition by the Federal Circuit of the importance of the appeals notice to VA claimants, the Federal Circuit has held that under certain circumstances, the judicial appeal period of 38 U.S.C. § 7266 may be equitably tolled. *See Barrett*, *supra* (holding that equitable tolling should be applied if a claimant's mental incompetency "rendered him incapable of 'rational thought or deliberate decision making,' or 'incapable of handling his own affairs or unable to function in society'" (citations omitted)); *Bailey v. Principi*, 351 F.3d 1381 (Fed. Cir. 2003) (*Bailey II*); *Santana-Venegas v. Principi*, 314 F.3d 1293 (Fed. Cir. 2002); *Jaquay v. Principi*, 304 F.3d 1276, 1288-89 (Fed. Cir. 2002) (en banc); *Bailey I*, *supra*. Although the Federal Circuit's analysis in *Bailey I* finding that equitable tolling applied to section 7266, *see Bailey I*, 160 F.3d at 1367, raised many unanswered questions, this Court is bound by that holding and the ensuing line of cases and must faithfully apply them when required. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (holding that this Court is bound by Federal Circuit precedent).

4

While the Supreme Court created the two possible scenarios in which to apply equitable tolling in *Irwin*, limits have been placed on the use of equitable tolling in the situation where the claimant actively pursued his judicial remedies. *Irwin*, 498 U.S. at 96. In a situation covered by this first prong of *Irwin*, the Federal Circuit has stated that "a veteran who files an untimely [NOA] must nevertheless show that the veteran 'exercised due diligence in preserving his legal rights.'" *Santana-Venegas*, 314 F.3d at 1297 (citing *Jaquay*, 304 F.3d at 1283); *Davis v. Principi*, 17 Vet.App. 29, 38 (2003); *see also Bailey I*, 160 F.3d at 1365. Generally, failing to follow the clear language of section 7266 and to adhere to the instructions to file an NOA with the Court would appear at first blush to be examples of "garden variety neglect." Yet, over the past five years, the Federal Circuit's line of decisions demonstrates an alchemistic transformation of garden variety negligence into due diligence. *See Bailey II*, *Santana-Venegas*, and *Jaquay*, all *supra*.

In *Jaquay*, the Federal Circuit en banc applied equitable tolling where a veteran had misfiled a motion for Board reconsideration with the RO "that ha[d] been assisting him develop his claim." 304 F.3d at 1286. The Federal Circuit stated:

> In the context of the non-adversarial, paternalistic, uniquely pro-claimant veterans' compensation system, and consistent with our decision in *Bailey* [*I*], the availability of equitable tolling pursuant to *Irwin* should be interpreted liberally with respect to filings *during the non-adversarial stage of the veterans' benefits process*.

*Id.* (emphasis added). The court went on to hold that, "as a matter of law,"

> a veteran who seeks redress of a claim and misfiles his request *at the same VARO from which the claim originated* thereby actively pursues his judicial remedies, despite the defective filing, so as to toll the 120-day statute of limitations of 38 U.S.C. §7266.

*Id.* at 1288-89 (emphasis added). In *Jaquay*, the veteran filed a motion for reconsideration of a Board decision–which would normally be filed within VA at the Board–with the RO. The Court in *Jaquay* held that equitable tolling was available under the first prong of *Irwin* because "due diligence" includes "filing misdirected paper[s]." *Jaquay*, 304 F.3d at 1288 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).

In *Santana-Venegas*, the Federal Circuit ruled that where a claimant gave a signed NOA to a representative at the office of the Puerto Rico Public Advocate for Veterans Affairs, who then mistakenly mailed it to the VARO where the claim originated instead of to the Court, the claimant "actively pursue[d] his judicial remedies, despite the defective filing, so as to toll the statute of limitations." 314 F.3d at 1298. The Federal Circuit concluded: "Once a veteran takes the affirmative act of seeking redress of his or her claim through a filing with the VARO from which the claim originated rather than the Veterans Court, 'the filing of the misdirected paper itself satisfies the diligence requirement as a matter of law.'" *Id.* (citing *Jaquay*, 304 F.2d at 1288). In reaching this

5

holding, however, the Federal Circuit presumed that the process of appealing adverse decisions to this Court occurs within the VA "non-adversarial, manifestly pro-claimant veterans' benefits system." *Id*. Furthermore, the Federal Circuit stated that the misfiling of the NOA at the VARO from which the claim originated "shows that the claimant seeks redress before the Secretary despite the claimant's mistaken belief as to the accuracy of the filing location." *Id*. at 1297-98.

The holding in *Santana-Venegas* presents two distinct problems. First, the Federal Circuit's opinion suggests that its due diligence determination was based on a premise that Mr. Santana-Venegas still was engaged in, or participating in, a nonadversarial, pro-claimant adjudication environment. *Id.* However, filing an appeal to this Court is not an action within the "non-adversarial, manifestly pro-claimant veterans' benefits system." *Id.* Rather, a veteran's appeal to this Court under section 7266 is the first step in an adversarial process challenging the Secretary's decision on benefits. *See Forshey v. Principi*, 284 F.3d 1335, 1355 (Fed. Cir. 2002) (en banc), *cert. denied*, 537 U.S. 823 (2002) ("The veterans' benefits system remains a non-adversarial system when cases are pending before the Veterans' [sic] Administration. However, the Court of Appeals for Veterans Claims' proceedings are not non-adversarial."). Before this Court, the Secretary becomes a represented appellee in an appellate court adversarial proceeding. Any consideration of the well-known pro-claimant atmosphere *within* the Department of Veterans Affairs, when determining whether a claimant's actions in attempting to file an NOA to this Court constitute due diligence, is misplaced. Indeed, we understand fully the Federal Circuit's sympathetic motives in applying equitable tolling. That motive however, has created conflict with other jurisprudential considerations. *See Butler v. Derwinski*, 960 F.2d 139, 140-41 (Fed. Cir. 1992) ("Although often effecting a seemingly harsh result, courts cannot disregard jurisdictional requirements[,] established by Congress[,] out of sympathy for particular litigants."), *overruled in part on other grounds by Bailey II*, 160 F.3d at 1368; *Baldwin Co. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

The second corollary problem is this: How does presenting an NOA for appellate review by this Court, regardless of where it is filed, demonstrate a veteran's intent to "seek[] redress before the Secretary?" A claimant for VA benefits has avenues to seek redress before the Secretary within the non-adversarial VA system (motions for reconsideration at the Board, motions alleging clear and unmistakable error in Board or VARO decisions, requests for vacation of Board decisions based upon denial of due process, and even requests for equitable relief from the Secretary have long been available). *See* 38 U.S.C. §§ 503, 5109A, 7103, 7111; 38 C.F.R. §§ 20.904, 20.1001, 20.1400 (2003). Filing an NOA under section 7266, however, demonstrates the exact opposite intent–a claimant's intent no longer to pursue his claim for benefits through the Secretary, but instead to take the Secretary to court by seeking a legal review before the Court of the Secretary's actions on his case. This separation between VA and the Court was made even more emphatic when Congress passed the Veterans Education and Benefits Expansion Act, Pub. L. No. 107-103, 115 Stat. 976 (Dec. 27, 2001), and removed from section 7266 the requirement for a veteran to "furnish the Secretary with a copy of [an NOA]." *Santana-Venegas* fails to address these issues.

In *Bailey II*, *supra*, the Federal Circuit identified another circumstance when equitable tolling of this Court's judicial appeal period is appropriate. After the Board denied his claim, and within the 120-day judicial-appeal period, Mr. Bailey completed a VA Form 9, "Appeal to the Board" (Form 9), which apparently was intended to be his NOA seeking review by this Court. *Bailey II,* 351 F.3d at 1383. Mr. Bailey gave the Form 9 to his state service representative who agreed to forward the document to the appropriate location. *Id*. The state service representative then forwarded the document to the VARO, where no action was taken. *Id*. Hearing nothing about his appeal for six months, Mr. Bailey contacted the Court and learned that his NOA had not been received. *Id*. He then presented to the Court a document expressing his desire to appeal the Board's decision, including a copy of the Form 9 he had given to his representative. *Id*.

In determining whether Mr. Bailey was entitled to equitable tolling, the Federal Circuit reiterated that it has "consistently held that equitable tolling applies to veterans [sic] cases in which the would-be appellant has misfiled or misdirected the notice of appeal." *Id*. at 1384. The court stated: "As long as the veteran's intention is clear and [VA] is put on notice of his intention to seek further review of his claim, an error in the form or in the office in which it is sent, or both, is not sufficient to render the filing ineligible for consideration under the equitable tolling doctrine." *Id*. at 1385. As in *Santana-Venegas*, the Federal Circuit apparently presumes that this Court is part of VA and that placing VA on notice satisfies the section 7266 requirement that an NOA be filed at this Court. *But see Abbs v. Principi*, 237 F.3d 1342, 1347-48 (Fed. Cir. 2001) (stating explicitly that this Court is independent and not part of VA); *MacWhorter v. Derwinski*, 2 Vet.App. 133, 136 (1992) ("An appeal to this Court begins an adversarial process, one not present at the administrative level."). In *Bailey II* the Federal Circuit then concluded:

> We hold that, as a matter of law, a veteran who attempts to file a[n NOA] by completing a document that is clearly intended to serve as a[n NOA] and who has that document delivered to the [VARO] from which the veteran's claim originated within the 120-day statutory period for appeal is entitled to invoke the doctrine of equitable tolling.

351 F.3d at 1382. Therefore, according to *Bailey II*, due diligence now includes the filing of any document that the veteran intends in his mind to take the place of an NOA.

In *Reed v. Principi*, 17 Vet.App. 380 (2003), the veteran mailed his NOA to the VA Office of General Counsel (OGC). It was postmarked within the 120-day period to timely file an NOA, but was not received by the OGC until after the 120-day period. The Court found *Santana-Venegas* and *Jaquay* were both readily distinguishable. *Id*. at 385. Furthermore, the Court*,* based on facts similar to those in the instant appeal, found that "[Mr. Reed] cannot rely on *Santana-Venegas* because, in contrast to the appellant in that case, who had not received [an appeals notice], [Mr. Reed] mailed his NOA to the OGC despite having the benefit of the [appeals notice] attached to the copy of the September 2001 BVA decision that was mailed to him." *Id*. Due diligence has not been held to extend to papers filed at the OGC.

7

In the instant appeal, however, the appellant completed, within the 120-day judicial-appeal period, what undisputedly must be construed as an NOA and, notwithstanding the clear direction in the appeals notice that accompanied the Board decision, her representative sent that document to the Board and requested that her appeal be forwarded to the Court. *See Bailey II*, *Santana-Venegas*, both *supra*; *see also* U.S. VET. APP. R. 3(c) (specifying content requirements for NOA); *Lariosa v. Principi*, 16 Vet.App. 323 (2002) (per curiam order) (discussing NOA content requirements); *Calma v. Brown*, 9 Vet.App. 11 (1996) (construing a letter written to the Court by a pro se appellant as a valid NOA because it met the content requirements of Rule 3(c)). When a claimant disagrees with a VARO decision, he or she files both an NOD and a Substantive Appeal not at the Board, but at the VARO. *See* 38 U.S.C. § 7105. Likewise, when a claimant wants to appeal a decision from this Court, the Notice of Appeal to the Federal Circuit is filed not at the Federal Circuit, but at this Court. *See* 38 U.S.C. § 7292. Thus, and despite the appeals notice, it is perhaps understandable that an appeal of a Board decision might be filed with the Board. *Cf. Reed*, *supra*. In any event, given the Federal Circuit's holding in *Bailey II* that "[a]s long as the veteran's intention is clear and DVA is put on notice of his intention to seek further review of his claim, an error in the form or in the office in which it is sent, or both, is not sufficient to render the filing ineligible for consideration under the equitable tolling doctrine," 351 F.3d at 1385, we must conclude that the timely misfiling of an NOA with the Board is analogous to the timely misfiling of an NOA with the VARO. *But see Irwin*, 498 U.S. at 96 (denying equitable tolling when the petitioner's attorney was the reason for the missed filing deadline).

Bound by the definition of "due diligence" in *Bailey II* and *Santana-Venegas*, both *supra*, we hold that this appellant's actions fall under the Federal Circuit's equitable-tolling-doctrine umbrella. Accordingly, the Court holds that the appellant's NOA is considered timely filed and the Court has jurisdiction to review this appeal. Based on the holding of the case, the Court will not address the appellant's other arguments for the application of equitable tolling as they are moot.

Upon consideration of the foregoing, it is

ORDERED that, not later than 60 days after the date of this order, the Secretary file with the Clerk and serve on the appellant the designation of the record on appeal. *See* U.S. VET. APP. R. 10.

DATED:        April 15, 2004                    PER CURIAM.